**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7307 SW Beveland Street, Suite 200
Portland, Oregon 97223
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

Attorneys for Plaintiff
**Anthony Cade**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **ANTHONY CADE**, an individual, | Case No. 2:20-cv-02172 |
| Plaintiff, | **COMPLAINT VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983)** |
| v. | |
| **ONTARIO SCHOOL DISTRICT NO. 8C**, | DEMAND FOR JURY TRIAL |
| Defendants. | |

1 – COMPLAINT

For his complaint, plaintiff Anthony Cade ("Plaintiff") respectfully alleges as follows:

## I.     JURISDICTION AND VENUE

1.     This is an action bringing a federal claim under 28 U.S.C. § 1331.

2.     Venue is proper in Oregon's federal court in this division, pursuant to 28 U.S.C. § 1391 (b)(1) and (2), because the events giving rise to Plaintiff's claims arose within this district and the defendant Ontario School District 8C ("Defendant") resides in this district for purposes of venue and jurisdiction.

## II.     THE PARTIES

3.     Plaintiff was and is an individual residing at all material times in Malheur County, Oregon.

4.     Defendant is and was at all material times an entity legally residing in Malheur County, Oregon.  Defendant's employees named or referenced in this complaint acted under color of law. Defendant is responsible for the actions of its officers, employees, and agents acting within the scope of their employment or duties.

## III.     FACTUAL ALLEGATIONS

### A.     Plaintiff's Initial Employment With Defendant

5.     Plaintiff was an employee of Defendant hired to serve as a teacher and head football coach for the 2019-2020 school year, with his work beginning on June 1, 2019.  In connection with Defendant's job offer, Plaintiff moved his family from Idaho to Oregon in the summer of 2019.

6.      Plaintiff excelled in all respects both as a teacher and a coach.  He was motivational, knowledgeable, and passionate, drawing on many years of experience coaching, teaching, motivating, and mentoring.

7.      Early on, Plaintiff experienced significant hostility from Ontario High School principal Jodi Elizondo.  She compelled him to switch from the teaching position into which he was hired – athletic conditioning – to become a social studies teacher.  Elizondo hired her own son, who was not certified, to replace Plaintiff as the main teacher of athletic conditioning.

8.      Plaintiff pushed his football players to exceed in *everything* they did, not just as football players.  Plaintiff witnessed players becoming more respectful, more players joining the team, and a better sense of team community, along with an obvious increase in team skill, talent, and capability.

**B.      Plaintiff Experiences False Allegations About His Coaching and Teaching**

9.      In September 2019, Plaintiff was accused by agents of the defendant of bullying the football players he coached.  He was accused of calling players "names" – including several innocuous slang terms (like "jackwagon") and "clowns" – terms he does not dispute that he used, but that he used only as typical football coaching motivational language.

10.      The mother of a player apparently complained about how their child was treated during a game, though no students, to Plaintiff's knowledge, ever took any issue with Plaintiff's motivational tactics.

11.      Based on Plaintiff's extensive experience spanning 18 years, and repeated victories and successes in prior football programs, the use of "soft"-style or weak-willed motivational talks paled in comparison to the firmer, stronger, and much more effective language that he typically, and historically, successfully used.  This reflected his passion for his players and the sport and is

a style that is typical across the country's football programs, whether high school, college, or professional.

12.    Defendant, on the other hand, equated treatment of students in the classroom with student-players on the football field, failing to recognize how football players need to be stretched to maximize their potential in a unique manner.  Defendant failed to recognize the true motivation behind Plaintiff's actions and its positive impact on the players.

13.    Notably, none of Defendant's relevant agents ever witnessed Plaintiff coaching his team.

### C.    Plaintiff's Termination and Subsequent Injuries

14.    Without any due process, Defendant relieved Plaintiff of his coaching responsibilities on September 25, 2019.  Defendant gave Plaintiff the option of classifying the termination of his coaching responsibilities as a "resignation."  Plaintiff accepted.  He anticipated "resigning" would (a) make Ontario's transition to a new head coaching team more palatable to the team and community, and (b) minimally protect Plaintiff's reputation in light of Defendant's egregious treatment of Plaintiff.

15.    Plaintiff accepted and resigned the coaching position on September 25, 2019.  Defendant drafted a resignation letter – without Plaintiff's input – and sent it to the local press immediately thereafter.  Defendant later refused to tell Plaintiff who drafted the resignation letter.  Plaintiff sought to understand why Defendant had stated positions on his behalf inconsistent with Plaintiff's experience, understanding, and beliefs – and he has never received an explanation.

16.    Supposedly pursuant to a request under the Freedom of Information Act, Defendant presented Plaintiff's confidential, private personnel file to the press.

17.    Plaintiff formally notified Defendant's superintendent and board of trustees of the reasons of his "resignation" on October 8, 2019.

18.      The effect of the resignation on the varsity football team was catastrophic.  Despite the players' and new coach efforts, the team's record was dismal, failing to win a single game during the season.

19.      Moreover, Plaintiff's reputation was irrevocably damaged.  In October 2019, numerous news outlets wrote about, re-stated, and accepted Defendant's cited pretextual and unlawful reasons for depriving him of his coaching position and defamed him to the general public.

20.      Plaintiff has not been able to secure a new coaching position since, despite his amazing credentials and skills.

21.      After his forced resignation, and knowing that Plaintiff had given the actual reasons for his termination to the superintendent and board of trustees, Defendant thereafter launched a campaign to harass Plaintiff, generating false allegations that he was derelict in his duties as a teacher.  These included claims that he was using social media during teaching hours, not attending meetings, leaving his classroom unsecure, and falling short of his grading responsibilities.

22.      One example of how ridiculous and pretextual these critiques were involve a claim by Defendant that Plaintiff improperly left a student unsupervised in his classroom.  Despite the tone, tenor, and intent of the allegation, the reality shows the efforts Defendant made to punish and ostracize Plaintiff.  This "unsupervised" student was Plaintiff's own daughter – a student at the school – who was, after hours, waiting for her dad for a ride home.

23.      These allegations were exaggerated and did not indicate Plaintiff did anything countless other teachers had done more often.

24.      Plaintiff did not have a legitimate opportunity to contradict these allegations.  Moreover, other employees were not harassed in such a manner.  Perhaps worse, Plaintiff's son – once a

member of the football team – was harassed by the new coaching staff, and his daughter was

overly scrutinized by some teaching staff and awkwardly ignored by others.  Plaintiff removed

his children from the school and sent them to a private school for protection.

25.    Unwilling to subject himself to this ongoing campaign of harassment, Plaintiff considered

himself constructively discharged in November 2019.

## III.    DAMAGES

26.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered and

continues to suffer economic damages, including loss of earnings, benefits, job opportunities,

and other employment benefits, in an amount continuing to accrue to be determined at trial.

27.    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered emotional

distress, mental pain and anguish, embarrassment, loss of dignity and reputation, sleeplessness,

humiliation, and loss of enjoyment of life.

28.    Plaintiffs also seek reasonable attorney fees and costs in an amount to be proven at trial.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Violations of Plaintiff's Constitutional Rights (42 U.S.C. § 1983))

29.    Plaintiffs incorporate paragraphs 1 through 28 by reference.

30.    Plaintiff had a reasonable expectation of continued employment both as a football coach

and teacher.

31.    Because of Defendant's termination of Plaintiff's head coaching and teaching position,

Plaintiff was deprived of rights guaranteed to him under the First and Fourteenth Amendments to

the United States Constitution, as applied to state and local governments under the Fourteenth

Amendment, in one or more of the following ways:

a.    Defendant compelled Plaintiff to resign his valuable and emotionally satisfying coaching position under threat of termination.  Plaintiff did not have a valid opportunity to defend himself against the false and ridiculous allegations made that he failed his coaching responsibilities.

b.    Defendant compelled Plaintiff to resign his teaching position because of Defendant's ongoing campaign of harassment.  Plaintiff was not provided with an opportunity to substantively contest the allegations against him or protect himself from the ongoing workplace harassment.

c.    Defendant harassed Plaintiff after he exercised his free speech rights to defend himself to the board of trustees and superintendent.

d.    Defendant stigmatized Plaintiff's reputation with untrue statements, which caused a change in his employment status and employment opportunity without due process.

32.    The deprivation of Plaintiff's constitutional rights was pursuant to the official policies, practices, and/or customs of Defendant, which are neither neutral nor of general applicability.

33.    Defendant's actions were not the least restrictive means of accomplishing any legitimate, let alone compelling, governmental interest.

34.    As a direct result of the misconduct of the defendants, Plaintiff suffered economic and noneconomic damages as alleged in paragraphs 26 and 27.

35.    Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action pursuant to 42 U.S.C. § 1988.

## V.    DEMAND FOR JURY TRIAL

36.    Plaintiff demands a trial by jury.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

37.     Economic damages in an amount to be proven at trial,

38.     Noneconomic damages in an amount to be proven at trial,

39.     Pre- and post-judgment interest on all amounts due to Plaintiff, and

40.     An award of attorney fees and costs as allowed by law and proven at trial, and

41.     Any other relief the Court deems just and equitable.

Respectfully submitted December 15, 2020.


*/s/ Micah D. Fargey*
**Micah D. Fargey** (OSB No. 096814)
micah@fargeylaw.com
FARGEY LAW PC
7307 SW Beveland Street, Suite 200
Portland, Oregon 97223
Telephone: (503) 946-9426
Facsimile: (503) 342-8332

**Attorneys for Plaintiff**
**Anthony Cade**